KIRKWOOD, State Bank Commissioner et al. *v.*
PROVIDENT SAVINGS BANK OF BALTIMORE

[No. 180, October Term, 1953.]

49

*Decided June 23, 1954.*

The cause was argued before DELAPLAINE, COLLINS, and HENDERSON, JJ.

*W. Giles Parker, Assistant Attorney General,* for the appellants.

*David R. Owen,* with whom were *John H. Mudd* and *Semmes, Bowen & Semmes* on the brief, for the appellee.

A brief of *amicus curiae* was filed by *L. Vernon Miller* and *Frank L. Fuller, III,* for the Savings Bank of Baltimore.

DELAPLAINE, J., delivered the opinion of the Court.

Provident Savings Bank of Baltimore, a mutual savings bank maintaining a central office in Baltimore and branch offices in Baltimore and Baltimore County, brought this suit against the State Bank Commissioner and the Attorney General of Maryland to obtain a judicial declaration that it has the power to establish additional branch offices in the counties of Maryland without the approval of the State Bank Commissioner, and to enjoin the defendants from prohibiting it from establishing branch offices in the counties, particularly at North Point Road and Eastern Avenue in Baltimore County.

This bank was incorporated by Act of the Maryland Legislature in 1886. The Act authorized the bank to establish "a central office and branches in such parts of the city, and of the adjacent parts of Baltimore county, known as the 'Belt,' as cannot now be adequately reached by the present Savings Banks." Laws 1886, ch. 145.

In 1888 the Legislature enlarged the bank's charter power by authorizing it to establish "a central office in the city of Baltimore, and branches in said city and in the counties of the State of Maryland." Laws 1888, chs. 69, 245.

Branch banking has been an outstanding feature of Provident's business. Within four months after its incorporation, six branches were in operation. In 1890 it established a branch at Sparrows Point, and in 1920 a branch at Dundalk. These are still in operation along with twelve branches in Baltimore.

Provident now desires to open a branch in a new shopping center at Essex in Baltimore County. But State Bank Commissioner William H. Kirkwood, Jr., acting upon an opinion of Attorney General Rollins, has taken the position that when the Legislature in 1935 empowered any mutual savings bank to establish branches in the

same city, town or village with the approval of the Bank Commissioner, Provident's power to establish branches in the counties was revoked by implication.

Provident thereupon instituted this suit to obtain an adjudication that the 1935 Act does not repeal Provident's charter power. Provident declared that it has no desire to avoid regulation by the Bank Commissioner; and that, in fact, ever since the office of Bank Commissioner was created, it has obtained his approval before opening any branch office, even though such approval was not necessary. However, it asserted that it is vitally interested in preserving its charter powers, and that unless the Attorney General's opinion is overruled, its power to establish branches in the counties will be lost.

The Uniform Declaratory Judgments Act, Code 1951, art. 31A, sec. 2, provides that any person whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder.

Section 6 of the Uniform Act provides that relief by declaratory judgment or decree may be granted in all civil cases in which an actual controversy exists between contending parties, or in which the court is satisfied that antagonistic claims are present between parties involved which indicate imminent and inevitable litigation, or when in any such case the court is satisfied that a party asserts a legal relation, status, right, or privilege in which he has a concrete interest and that there is a challenge or denial of such asserted relation, status, right, or privilege by an adversary party who also has or asserts a concrete interest therein, and the court is satisfied also that a declaratory judgment or decree shall serve to terminate the uncertainty or controversy giving rise to the proceedings.

Generally, a controversy that will justify a court in entertaining a suit under the Uniform Act must be some-

thing more than a mere difference of opinion or a theoretical question. It must present a state of facts involving persons adversely interested in matters in respect to which a declaration is sought. *Tanner v. Mc-Keldin,* 202 Md. 569, 576-577, 97 A. 2d 449, 452. As Provident has an actual and justiciable controversy with the State Bank Commissioner and the Attorney General, it had the right to invoke the Uniform Act.

The Savings Bank of Baltimore, as *amicus curiae,* filed a brief in this Court suggesting that the Court below went beyond the requirements of the case in ruling upon charter powers of the seven other savings banks to establish branch offices. We agree that, in the decision of this case, no adjudication is made of the rights of other banks.

In 1910 the Legislature completely revised the banking laws of this State. In enacting Article 11 of the Maryland Code, entitled "Banks and Trust Companies," it created the office of State Bank Commissioner and made provision for the regulation and supervision of all banks, savings institutions and trust companies in Maryland. Laws 1910, ch. 219.

The general law authorizing mutual savings banks to establish branch offices, which was passed by the Legislature in 1935, and upon which appellants rely, provides as follows: "With the approval of the Bank Commissioner, any mutual savings institution shall have the right and authority to establish in the same city, town or village and maintain branches where its guarantee fund equals the minimum requirement as to capital of State banks in the same locality." Laws 1935, ch. 498, Code 1951, art. 11, sec. 40.

The Court below entered a decree, from which the Bank Commissioner and the Attorney General appealed, declaring that the Act of 1935 did not repeal any part of Provident's charter, and therefore Provident has the power to establish branch offices in the counties of Maryland without the approval of the Bank Commis-

sioner. The decree also granted the injunction prayed for.

Appellants contended that the Act of 1935, by authorizing any mutual savings bank to establish branches in the same city, town or village, repealed by implication Provident's power to establish branches outside the city of Baltimore. They relied on the maxim *"expressio unius est exclusio alterius."* But this maxim, meaning that the expression of one thing implies the exclusion of another thing not mentioned, is not a rule of law, but merely an auxiliary rule of statutory construction applied to assist in determining the intention of the Legislature where such intention is not manifest from the language used. It should be used with caution, and should never be applied to override the manifest intention of the Legislature or a provision of the Constitution. *Illinois Central R. Co. v. Franklin County,* 387 Ill. 301, 56 N. E. 2d 775; *Commerce Trust Co. v. Paulen,* 126 Kan. 777, 271 P. 388, 63 A. L. R. 384; *State ex rel. Normile v. Cooney,* 100 Mont. 391, 47 P. 2d 637; *Cabell v. City of Cottage Grove,* 170 Or. 256, 130 P. 2d 1013; *Industrial Trust Co. v. Goldman,* 59 R. I. 11, 193 A. 852, 112 A. L. R. 1313; *United States v. Barnes,* 222 U. S. 513, 32 S. Ct. 117, 56 L. Ed. 291; *Neuberger v. Commissioner of Internal Revenue,* 311 U. S. 83, 61 S. Ct. 97, 101, 85 L. Ed. 58.

In the case before us the conditions do not warrant the application of this maxim. We find it imperative to apply here the established rule of construction that repeals by implication are never favored by the courts, and the presumption is always against an intention of the Legislature to repeal or modify a pre-existing statute beyond the express terms or immediate scope of a later statute. The Court should not hold that there has been a repeal by implication unless there is some express reference to the previous statute, or there is a manifest inconsistency in the two statutes or their provisions are so repugnant that they cannot stand together. *Thomas v. State,* 173 Md. 676, 681, 197 A. 296; *State v. Clifton,*

177 Md. 572, 574, 10 A. 2d 703; *Buchholtz v. Hill,* 178 Md. 280, 288, 13 A. 2d 348; *Lewis v. Gsell,* 183 Md. 123, 128, 36 A. 2d 702; *Pressman v. Elgin,* 187 Md. 446, 450, 50 A. 2d 560, 169 A. L. R. 646.

In applying this rule in *Garitee v. City of Baltimore,* 53 Md. 422, 435, 436, Judge Alvey made the following emphatic comment: "If the subsequent Act can be made, by any reasonable construction or intendment, to stand with the previous legislation, that construction will always be adopted. This is a canon of construction which is as well established as any principle of law. * * * Here there is no sort of conflict between the later and previous statutes; the later statute simply conferring additional power in affirmative terms, without at all undertaking to regulate or touch upon the subject-matter of former statutes."

We concede that if the language of a general law clearly indicates, either expressly or by necessary implication, a purpose to repeal a local law by the adoption of the general law, the local law must yield to that intention. But it might be mentioned that one of the rules of interpretation laid down in the Code is that where a public general law and a public local law are in conflict, the public local law shall prevail. Code 1951, art. 1, sec. 13. This statutory rule in respect to subsequent legislation is declaratory of the common-law rule that no local law or special law shall be held repealed except by a clearly indicated purpose on the part of the Legislature. *Alexander v. City of Baltimore,* 53 Md. 100, 105.

Appellants called attention to Section 52 of Article 11, which states: "The provisions of Sections 40 to 51, inclusive, shall apply to all savings banks, or savings institutions, without capital stock, now existing or hereafter incorporated, engaged in an exclusive savings bank business." It was argued that, by the direction of Section 52, Section 40 applies to Provident as well as the other savings banks.

Two answers may be given to that argument. The first is that Section 52 was enacted in 1910, twenty-five

years before the pertinent provision in Section 40, and therefore it does not give an indication of the intention of the lawmakers at the session of 1935. Secondly, the Act of 1935 applies only to city branches. Even if Section 52 has the effect of making Section 40 applicable to Provident as well as other savings banks, which we do not here decide, it does not have any effect on Provident's power to establish county branches.

The Act of 1935 makes no mention of Provident's charter power. It does not even contain the clause, frequently inserted in statutes, "that all acts and parts of acts inconsistent with the provisions of this act are hereby repealed."

It may be noted that Chapter 194 of the Laws of 1912, which also amended the State Bank Law, contained such a clause, and also a clause that "all charters of institutions which are subject to the provisions of this act heretofore granted by the General Assembly of Maryland where the franchises shall not have been availed of to the extent of forming a complete organization and establishing an office by the first day of January, 1914, are hereby repealed."

We take occasion to cite a portion of Article III, Section 48, of the Constitution of Maryland, as amended by Chapter 195 of the Laws of 1890, ratified by the voters of the State in November, 1891:

"Corporations may be formed under general laws, but shall not be created by special act, except for municipal purposes and except in cases where no general Laws exist, providing for the creation of corporations of the same general character as the corporation proposed to be created, and any act of incorporation passed in violation of this section shall be void; all charters granted or adopted in pursuance of this section, and all charters heretofore granted and created subject to repeal or modification, may be altered from time to time, or be repealed; provided, nothing herein contained shall

58

be construed to extend to banks or the incorpora-
tion thereof; * * *."

Provident contended that its charter rights are pro-
tected by the guarantee of the Constitution of the United
States, Article I, Section 10, that no State shall pass
any law impairing the obligation of contracts; and it
cited the decision in the *Dartmouth College Case, Trus-
tees of Dartmouth College .v. Woodward,* 4 Wheat. 518,
4 L. Ed. 629, in support of its position. Appellants,
on the other hand, asserted that the Legislature has
the constitutional power to regulate and restrict Provi-
dent's franchise rights. There is no question that the
business of banking bears such a relation to the economic
security of the public as to be a proper subject of
regulation by the State in the exercise of its police power.
*Weer v. Page,* 155 Md. 86, 141 A. 518. But in the
present case it is not necessary to decide how far, if
at all, the Legislature may curtail Provident's charter
power to establish branches in Baltimore and in the
counties.

Assuming, without deciding, that the Legislature has
the constitutional power to abrogate or reduce .Provi-
dent's charter power to establish branch banks, such
power could not be exercised without some mention
thereof in both the title and body of the statute. The
Constitution of Maryland, Article III, Section 29, com-
mands that "every law enacted by the General Assembly
shall embrace but one subject, and that shall be de-
scribed in its title." One of the purposes of this pro-
vision of our State Constitution, as we said recently in
*Pressman v. State Tax Commission,* 204 Md. 78, 92, 102
A. 2d 821, 829, is to inform the citizens of the State
of the subjects of legislation that are being considered
by the Legislature, so that anyone may have an op-
portunity to be heard thereon by petition or otherwise.
For example, in *United Railways & Electric Co. v. City
of Baltimore,* 121 Md. 552, 561, 88 A. 617, this Court
said that, assuming that the Legislature had the power
to amend the railway's charter, so as to compel it to
repave the street between its tracks, it could not make

such an amendment except by an act whose title gave notice of the amendment.

It is a fundamental rule that there is always a presumption in favor of the constitutionality of a legislative enactment. When the Court is called upon to review an act of the Legislature, a co-ordinate branch of the government, its duty is of the gravest character. The Court will not denounce a statute as void on the ground that the lawmaking power has violated the Constitution, except when such violation is clear and unmistakable. Consequently the Court will always so construe a statute as to avoid a conflict with the Constitution and give it full force and effect whenever reasonably possible. *City of Baltimore v. State,* 15 Md. 376, 453, 74 Am. Dec. 572; *Fell v. State,* 42 Md. 71, 89, 20 Am. Rep. 83; *Stiefel v. Maryland Institution for Instruction of Blind,* 61 Md. 144, 148; *Hospelhorn v. Emerson,* 175 Md. 207, 216, 200 A. 378, 117 A. L. R. 650; *County Com'rs. of Anne Arundel Co. v. English,* 182 Md. 514, 519, 35 A. 2d 135, 150 A. L. R. 842.

The Act of 1935 gives to any mutual savings institution the additional right, where needed, to establish and maintain branch banks in the same city, town or village with the approval of the Bank Commissioner, provided that the guarantee fund equals the minimum requirement as to capital of State banks in the same locality. There is no repugnancy between this Act and Provident's charter. The title of the Act gives no notice of any change in the State Bank Law except the re-enactment of one section for the purpose of "authorizing mutual savings institutions to establish and maintain branches under certain conditions." The title gives no notice of any intention to abrogate or reduce the charter power of Provident or any other corporation.

As the Act of 1935 did not abrogate or reduce Provident's charter power, Provident cannot be prevented from exercising its power to establish branch banks in the counties of Maryland.

*Decree affirmed, with costs.*