HARFORD COUNTY, MARYLAND *v.*
JAMES H. SCHULTZ ET AL.

[No. 139, September Term, 1976.]

*Decided April 5, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Maurice W. Baldwin, Jr., Deputy County Attorney*, with whom were *John E. Kelly, County Attorney*, and *Robert A. Kreamer, Assistant County Attorney*, on the brief, for appellant.

No brief filed on behalf of appellees.

SMITH, J., delivered the opinion of the Court.

The issue presented here by appellant, Harford County, Maryland (the County), and which was considered in the lower court concerns the validity of a proposed amendment to its County charter. *Ex mero motu* we raise the issue of jurisdiction. Since we find a lack of jurisdiction, we shall vacate the decree of the trial court and remand the case to it for a dismissal of the proceeding.

In the spring and summer of 1976 the County Council of the County proposed two amendments to the County charter. One, Bill No. 76-35, was vetoed by the County Executive and passed over his veto. The other, Bill No. 76-56, allegedly was certified to the Board of Supervisors of Elections prior to the expiration of the time for consideration of the proposal by the County Executive. Maryland Constitution Art. XI-A, § 5 requires proposed charter amendments to "be submitted to the voters of said ... County at the next general or congressional election occurring after the passage of [the] resolution" proposing an amendment. It is conceded that the issue with reference to Bill No. 76-56 is moot since that bill was rejected by the people at the general election held on November 2, 1976.

The County instituted a declaratory judgment action against the appellees who constitute the Board of Supervisors of Elections for Harford County (the Board). They were the only defendants named in the bill. It sought a declaration that both bills were invalid and an injunction

against advertising or placing these bills on the election ballot.

The chancellor (Higinbothom, J.) filed a comprehensive opinion holding the bills to be "valid and proper legislative acts to be submitted to the voters of Harford County at the November 1976 election . . . ." He noted in the course of his opinion:

"The present proceeding appears to be a good example of the need for a separate counsel for the Harford County Council, which is attempted to be accomplished by Bill No. 76-35. This suit has been brought in the name of Harford County, Maryland, a body corporate, seeking to enjoin the Board from considering two proposed charter amendments adopted by the Council. The only defendants are the members of the Board and they have no particular interest in defending the validity of the ordinances in question. In fact, the answer of the defendants concedes that the Board does not take a position as to the legal questions raised in the bill of complaint, although at the hearing the defendants did present evidence by the attorney employed by the Harford County Council. The plaintiff, as a body corporate, is actually expressing in this case the views of the Department of Law, which, by Section 402 of the Charter, is an agency of the Executive Branch of the county government. Nowhere in this case are the views of the Harford County Council expressed, although most certainly the Council is vitally concerned with the outcome of the case. No question of the standing of the plaintiff to bring this action has been raised, however."

The chancellor's view of the position of the Board is emphasized by the fact that no brief for the appellees has been filed in this Court or the Court of Special Appeals. We granted certiorari prior to consideration of the matter by the Court of Special Appeals.

In *State v. McCray*, 267 Md. 111, 126, 297 A. 2d 265 (1972),
Judge Orth "note[d for this Court] that a question of the
jurisdiction of the lower court, even though not tried and
decided below and neither briefed nor argued, may be raised
by this Court, *sua sponte*, as an exception to the general rule
established by Maryland Rule 885," citing a number of cases.
A general principle of law is that for a court to have
jurisdiction it must have before it a justiciable issue. As
stated by Judge Henderson for the Court in *Hammond v.
Lancaster*, 194 Md. 462, 471-72, 71 A. 2d 474 (1950), citing
DeTocqueville, *Democracy in America*, and Bryce, *American
Commonwealth*, "courts will not decide moot or abstract
questions, or, in the absence of constitutional mandate,
render advisory opinions."

This proceeding was brought under the Maryland version
of the Uniform Declaratory Judgments Act as altered
slightly in language when it became Md. Code (1974)
§§ 3-401 to 415, Courts and Judicial Proceedings Article.
With an exception not relevant to this proceeding, § 3-409
(a) provides in pertinent part:

> "(a) *In general.* — ... [A] court may grant a
> declaratory judgment or decree in a civil case, if it
> will serve to terminate the uncertainty or
> controversy giving rise to the proceeding, and if:
>
> (1) An actual controversy exists between con-
> tending parties;
>
> (2) Antagonistic claims are present between the
> parties involved which indicate imminent and
> inevitable litigation; or
>
> (3) A party asserts a legal relation, status, right,
> or privilege and this is challenged or denied by an
> adversary party, who also has or asserts a concrete
> interest in it."

Here we have no assertion of "a legal relation, status, right,
or privilege ... challenged or denied by an adversary
party ...." Therefore, to come within the purview of the
act there must be either "[a]n actual controversy ...

between contending parties" or there must be "[a]ntagonistic claims . . . between the parties involved which indicate imminent and inevitable litigation . . . ."

In *Kirkwood v. Provident Savings Bank*, 205 Md. 48, 106 A. 2d 103 (1954), Judge Delaplaine said for our predecessors:

"Generally, a controversy that will justify a court in entertaining a suit under the Uniform Act must be something more than a mere difference of opinion or a theoretical question. It must present a state of facts involving persons adversely interested in matters in respect to which a declaration is sought. *Tanner v. McKeldin*, 202 Md. 569, 576-577, 97 A. 2d 449, 452 [(1953)]." *Id.* at 53-54.

In *Atkinson v. Sapperstein*, 191 Md. 301, 316, 60 A. 2d 737 (1948), Judge Collins observed for the Court, citing a number of cases, "It is well established law in this State that unless there be an actual controversy or at least a potential controversy and the persons to the controversy made parties, a declaratory decree cannot be sustained."

In *Patuxent Co. v. Commissioners*, 212 Md. 543, 129 A. 2d 847 (1957), Judge Prescott said for the Court:

"[I]n this State, it consistently has been held that in order to invoke the jurisdiction of the Courts for declaratory relief, there must be a justiciable issue or controversy; and, insofar as we have been informed, it is universally so held. A concise definition of what constitutes a justiciable issue or controversy is given by *Anderson* in his *Actions for Declaratory Judgments*, Vol. 1, par. 17: 'A controversy is justiciable when there are interested parties asserting adverse claims upon a state of facts which must have accrued wherein a legal decision is sought or demanded.' See also *Tanner v. McKeldin*, 202 Md. 569, 576, 577, 97 A. 2d 449; *Kirkwood v. Provident Savings Bank*, 205 Md. 48, 53, 54, 106 A. 2d 103." *Id.* at 548.

A case analogous to the one at bar was before the Supreme Court of Pennsylvania in *Whitehall Twp. v. Oswald*, 400 Pa. 65, 161 A. 2d 348 (1960). The municipality there enacted an ordinance relative to what are commonly called trailers, although some prefer the more euphemious term of mobile homes. When the parties defendant there purchased and occupied such trailers in possible violation of the ordinance the municipality brought a declaratory judgment action to have the ordinance declared valid. In holding that the municipal corporation was "without standing to invoke the jurisdiction of the court below for the purpose of having the constitutionality of its trailer ordinance adjudicated in a declaratory judgment proceeding," the Pennsylvania court said:

"The present proceeding is unique in at least one particular for which no parallel is to be found in the annals of Pennsylvania's jurisprudence. The plaintiff township, a political subdivision, seeks, by means of a declaratory judgment petition, a judicial pronouncement upon the constitutionality of its own voluntary enactment. It is as unorthodox as it is extraordinary for a municipality to enact an ordinance and then forthwith supplicate a court's determination of its constitutionality. To construe the Uniform Declaratory Judgments Act as granting such a right to a governmental body would be to encourage legislative irresponsibility and to constitute the courts the legal advisers of municipalities with respect to their legislative enactments. If a question concerning the constitutionality of an ordinance is to be passed upon by a court, it can be done properly only as the sequence of an actual controversy based upon a sufficient allegation by a complainant that he is being harmed or threatened with imminent harm in violation of his constitutionally protected rights.

"The draftsman of the Uniform Declaratory Judgments Act labored under no misapprehension

as to the impossible situation that would result if a municipality were permitted to test by a declaratory judgment proceeding the constitutionality of one of its own enactments. Such a right, the statute does not extend to a municipality or other political subdivision clothed with legislative power. The right to question the construction or validity of a municipal ordinance by a declaratory judgment proceeding, in appropriate circumstances, and obtain a declaration of the petitioner's rights, status, or legal oblig tions under the ordinance, is restricted by Section 2 of the Act of June 18, 1923, P.L. 840 (12 PS § 832) to 'Any person ... whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract or franchise . . . .' Certainly, it can not reasonably be said that the plaintiff township's 'rights, status, or other legal relations' have been adversarily affected by its own deliberately intended enactment.

"Would anyone contend that, by virtue of the above quoted statutory provision, the legislature conferred upon the Commonwealth a right to resort to a declaratory judgment proceeding to have an act of assembly construed or validated? To what end could such a procedure be designed? For what purpose would an ordaining public body subject to judicial scrutiny its own legislative enactments which are presumptively constitutional as a matter of law? And, it has been expressly recognized that 'The same presumption of constitutional validity that attends an act of the legislature is equally applicable to municipal ordinances whether they be enacted by the council of a city, town or borough or by the supervisors of a township' : *Bilbar Construction Company v. Easttown Township Board of Adjustment*, 393 Pa. 62, 71, 141 A. 2d 851 [(1958)]. So long as an ordinance is unquestioned,

its constitutional validity remains established." *Id.* at 67-69.

*Cf. City of Evansville v. Grissom*, 349 N.E.2d 207 (Ind. App. 1976), and *City of Mishawaka v. Mohney*, 156 Ind. App. 668, 297 N.E.2d 858 (1973). If the Pennsylvania court regarded it "as unorthodox" and "extraordinary for a municipality to enact an ordinance and then forthwith supplicate a court's determination of its *constitutionality*," (emphasis added) one cannot help wondering what its reaction would be to the enactment of a charter amendment by a county followed by an immediate request on behalf of the county to a court to determine the amendment, the county's own act, to be *un*constitutional.

In *Mishawaka* the court quoted from 1. W. Anderson, *Actions For Declaratory Judgments* § 16 (2d ed. 1951) which states:

"In order to invoke the jurisdiction of the court under the declaratory judgment statute, there must be an actual, existing justiciable controversy between the parties, having opposing interests, which interests must be direct and substantial, and involve an actual, as distinguished from a possible, or potential dispute; the act may not be used for the purpose of obtaining purely advisory opinions from the court." *Id.* at 66.

It will be recalled that in *Patuxent* Judge Prescott quoted for the Court from Anderson as to what is a justiciable controversy, a statement appearing in that work but two paragraphs beyond that quoted by the Indiana court.

Our cases are replete with statements such as that by Judge Digges for the Court in *Dep't of Nat. Res. v. Linchester*, 274 Md. 211, 334 A. 2d 514 (1975):

"In assessing the constitutionality of an act of the General Assembly we are mindful of the fact that enactments of the Legislature are presumed to be constitutionally valid and that this presumption prevails until it appears that the enactment under

consideration is invalid or obnoxious to the expressed terms of the Constitution or to the necessary implication afforded by, or flowing from, such expressed provisions. *Md. Bd. of Pharmacy v. Sav-A-Lot*, 270 Md. 103, 106-07, 311 A. 2d 242 (1973); *Salisbury Beauty Schools v. St. Bd.*, 268 Md. 32, 48-49, 300 A. 2d 367 (1973)." *Id.* at 218.

In *Anne Arundel County v. Moushabek*, 269 Md. 419, 422, 306 A. 2d 517 (1973), repeated in *Harford County v. Board*, 272 Md. 33, 38, 321 A. 2d 151 (1974), we observed that a County charter "is to its legislative body as the Constitution of Maryland is to the General Assembly of Maryland." Citing *Connor v. Board of Supervisors*, 212 Md. 379, 383, 129 A. 2d 396 (1957), and *Co. Com'rs v. Supervisors of Elec.*, 192 Md. 196, 207-08, 63 A. 2d 735 (1949), we said in *Wilson v. Bd. of Sup. of Elections*, 273 Md. 296, 300-01, 328 A. 2d 305 (1974), "A charter provision is entitled to the same presumption of validity applicable to any regularly adopted law." It no doubt is because of these presumptions that our declaratory judgment act provides in § 3-405 (b), "In any proceeding which involves the validity of a municipal or county ordinance . . . , the municipality or county shall be made a party and is entitled to be heard."

Here we have the anomalous situation of the attack on the validity of the ordinance being by the political subdivision which enacted it. It would be similar to the situation which might exist if the Governor were to direct the Attorney General to docket an action in the name of the State contesting the validity of an enactment of the General Assembly. Inevitably in the latter situation the question would arise as to who would protect the presumption of validity, who would appear for and present the arguments which should be presented in an effort to show that the act was valid. The same question arises here. It is obvious that the Board has no interest one way or the other in the outcome of this proceeding. There is no defense here. No one as a party to the case has sought to uphold the validity of the charter amendment which, under our cases, is presumed to

be valid. It sits in the position of a forlorn, rejected orphan, without friends or anyone to support or protect it. In a normal contest as to the validity of an enactment through declaratory judgment procedure, a suit is brought by a person, often a taxpayer, with standing to mount such an attack and then the defense is supplied through counsel for the municipality or county or, in the case of the State, by the Attorney General. The procedure here is in sharp contrast with that existing in *Harford County v. Board, supra,* 272 Md. 33, where the Board of Supervisors of Elections of Harford County filed the bill for a declaratory judgment and the County as well as two individuals who had filed for election to the County Council from an altered councilmanic district were named as parties defendant. A spirited defense was there provided by the County. It is true that some evidence was offered in the trial court in this case by the Board, but the defense hardly rose to the level of "[a]n actual controversy . . . between contending parties . . . ." In *Staley v. Safe Deposit & Trust Co.,* 189 Md. 447, 456, 56 A. 2d 144 (1947), Judge Markell took cognizance for the Court of the emphasis by the Supreme Court on the need in a declaratory judgment action of "an actual controversy between adverse parties seeking a determination of their legal rights," pointing to *Muskrat v. United States,* 219 U. S. 346, 31 S. Ct. 250, 55 L. Ed. 246 (1911), and *Warehouse Co. v. Tobacco Growers,* 276 U. S. 71, 88, 89, 48 S. Ct. 291, 72 L. Ed. 473 (1928), as "denying the judicial nature of a declaratory judgment when such a controversy is lacking." We find the lack of such an actual controversy here. Therefore, no justiciable issue was presented to the trial court. It thus follows that the court lacked jurisdiction to make a determination in the case. Moreover, as pointed out by the court in *Whitehall Twp. v. Oswald, supra,* 400 Pa. 65, the authority granted by § 3-406 (§ 2 of the Uniform Declaratory Judgments Act) is for "[a]ny person . . . whose rights, status, or other legal relations are affected by a statute, municipal ordinance, administrative rule or regulation, contract, or franchise [to] have determined any question of . . . validity, arising under [any of them] and

obtain a declaration of rights, status, or other legal relations under it." In the words of the Pennsylvania court, Harford County's "rights, status, or other legal relations" certainly "have [not] been adversarily affected by its own deliberately intended enactment" of an amendment to its own charter. Accordingly, the bill of complaint should have been dismissed.

> *Decree vacated and case remanded for the passage of an order dismissing the bill; Harford County to pay the costs.*