**SCHOOL COMMITTEE OF TOWN OF YORK**

v.

**TOWN OF YORK and York Charter Commission.**

Supreme Judicial Court of Maine.

Argued March 19, 1993.

Decided June 14, 1993.

Richard A. Spencer (orally), Barbara L. Krause, Drummond, Woodsum, Plimpton & McMahon, Portland, for plaintiff.

John C. Bannon (orally), Murray, Plumb & Murray, Portland, for Town of York.

James T. Kilbreth (orally), Robert C. Brooks, Verrill & Dana, William P. Briggs, Dill & Briggs, Kittery, for Charter Com'n.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, COLLINS and RUDMAN, JJ.

WATHEN, Chief Justice.

Defendant Town of York (Town), acting through its Selectmen, appeals from a judgment entered in the Superior Court (York County, *Brodrick, J.*) in favor of defendant York Charter Commission[1] (Charter Commission) declaring virtually all of the provisions of the York Home Rule Charter (Charter) valid except those pertaining to the school budget process. The Charter Commission cross-appeals from a previous judgment entered in the Superior Court (York County, *Brodrick, J.*) in favor of plaintiff School Committee of the Town of York[2] (School Committee) declaring all Charter provisions relating to school budget matters to be invalid. Because we conclude that all of the challenged provisions of the Charter are within the Town's home rule authority pursuant to 30-A M.R.S.A. § 3001 (Pamph.1992), we vacate the judgment entered in favor of the School Committee, and we affirm the judgment entered in favor of the Charter Commission with respect to non-school matters.

The Charter Commission was created in 1989 for the purpose of drafting the Town's first charter. The Charter, enacted in 1991, significantly changed the structure of the Town's government. Prior to that time the Town was governed by the applicable laws of Maine (Title 30-A M.R.S.A.) and local ordinances. Under that system of governance, the School Committee had sole responsibility for preparing a budget for the school administrative unit and the Selectmen had responsibility for preparing a municipal budget. Those budgets were presented to voters for approval by voice vote at the annual Town Meeting.

The Charter divested budgetary authority from the School Committee and the Selectmen, and established a Budget Committee with exclusive authority to determine the amount of each warrant article in the Town Budget[3] to be presented at the annual Budget Referendum (similar to the former Town Meeting) and included on the ballot for consideration by the voters.[4]

---

1. The Charter Commission is an agency of the Town, created pursuant to 30-A M.R.S.A. § 2103, to draft the Charter.

2. The School Committee was joined as a plaintiff by ten citizen petitioners.

3. The Town Budget is comprised of the School Budget and the Municipal Budget.

4. The Charter provides for the Budget Committee to receive a proposed school budget and municipal budget from the School Committee and the Selectman respectively. The Budget Committee is required to hold at least one public hearing on the proposed budgets and is permitted to adjust any proposed amounts except those required by law or for debt service. It

Shortly after the Charter was enacted, the School Committee filed a declaratory judgment action challenging the validity of the Charter's school budget provisions. The Town cross-claimed and counter-claimed, seeking a judgment declaring the extent to which other Charter provisions would be enforceable in the event that the school provisions were found to be invalid, and seeking clarification of the effective date of the Charter.[5] On May 15, 1992, the Superior Court granted a summary judgment in favor of the School Committee, declaring the Charter provisions relating to "school budgetary matters" to be invalid because they "usurp power and authority reserved to the School Committee." The Town then amended its counterclaim and cross-claim asserting the invalidity of the Charter provisions concerning the Budget Committee, voting by secret ballot, recall elections, and the election of a town meeting moderator. The Town moved for a summary judgment and the Charter Commission countered, moving for a summary judgment on the ground that the contested provisions are a valid exercise of home rule authority. The Superior Court granted a summary judgment in favor of the Charter Commission, with one minor exception.[6] Thus, on appeal we are presented with judgments striking down the school budget provisions, but sustaining the remainder of the Charter.

I.

## HOME RULE AUTHORITY

This case concerns the limits of the Town's home rule charter authority. At issue is the relationship between the constitutional grant of home rule authority and the statutory grant of home rule authority in 30–A M.R.S.A. § 3001 (Pamph.1992).

The Maine Constitution's home rule provision reads as follows:

> The inhabitants of any municipality shall have the power to alter and amend their charters on all matters, not prohibited by Constitution or general law, which are local and municipal in character. The Legislature shall prescribe the procedure by which the municipality may so act.

Me. Const., art. VIII., pt. 2, § 1. The last sentence of that provision contemplates the enactment of procedural enabling legislation. The original enabling legislation, however, went beyond procedural matters and broadened the scope of municipal home rule authority set out in the Maine Constitution by permitting local legislation in areas beyond those "local and municipal in character."[7] With the advent of the most recent amendments to the home rule enabling legislation, it is clear that the Legislature intended to convey a plenary grant of the state's police power to municipalities, subject only to express or implied limitations.[8] Title 30–A M.R.S.A. § 3001 reads in pertinent part as follows:

> *which is not denied either expressly or by clear implication,* and exercise any power or function granted to the municipality by the Constitution, general law or charter.

Act of Jan. 30, 1970, ch. 563, 1971 Maine Laws 59, 66 (codified at 30 M.R.S.A. § 1917) (emphasis added).

---

must, however, list the budget recommendations of the School Committee and the Selectmen on the ballots for the information of the voters.

5. The parties subsequently stipulated to the dismissal of all counts in their pleadings pertaining to the effective date of the Charter.

6. The Superior Court found the Charter provision requiring tie votes in elections for municipal officers to be resolved by lot to be invalid because it was inconsistent with the provisions of Title 30–A M.R.S.A. The Charter Commission does not appeal that ruling.

7. Section 1917 of the original enabling legislation read in part as follows:

> Any municipality may, by the adoption, amendment or repeal of ordinances or by-laws, *exercise any power or function which the Legislature has the power to confer upon it,*

8. The legislative committee report contains the following statement of legislative intent regarding municipal home rule authority set out in section 3001:

> The standard [of review set out in 30–A M.R.S.A. § 3001] reaffirms the fundamental principle of home rule, that municipalities have been given a plenary grant of power, while recognizing that this authority is subject to the State's ability to limit that power in the furtherance of legitimate state interests. Only where the municipal ordinance prevents the efficient accomplishment of a defined state

Any municipality, by the adoption, amendment or repeal of ordinances or bylaws, may exercise any power or function which the Legislature has power to confer upon it, which is not denied either expressly or by clear implication, and exercise any power or function granted to the municipality by the Constitution of Maine, general law or charter.

1. Liberal Construction. This section, being necessary for the welfare of the municipalities and their inhabitants, shall be liberally construed to effect its purposes.

2. Presumption of authority. There is a rebuttable presumption that any ordinance enacted under this section is a valid exercise of a municipality's home rule authority.

3. Standard of Preemption. The Legislature shall not be held to have implicitly denied any power granted to municipalities under this section unless the municipal ordinance in question would frustrate the purpose of any state law.

■ The Legislature has authority to grant municipalities broader home rule powers than are granted in the Constitution's home rule provision. Although a statute would ordinarily be restricted by the underlying constitutional provision, in this instance, the resort to the constitution was not necessary and was employed only to address concerns about the validity of the delegation of powers. For a summary of the relevant legislative history, *see* Robert W. Bower, Jr., Comment, *Home Rule and the Preemption Doctrine: The Relationship Between State and Local Gov-*

ernment in Maine, 37 Me.L.Rev. 313, 339 (1985). Legislative power is plenary, subject only to express or implied limitations of the state and federal constitutions. *See* Me. Const. art. IV, pt. 3, § 1 ("The Legislature, with the exceptions hereinafter stated, shall have full power to make and establish all reasonable laws and regulations for the defense and benefit of the people of this State, not repugnant to the Constitution, nor to that of the United States."); *Ace Tire Co. v. Municipal Officers of Waterville,* 302 A.2d 90, 96 (Me.1973). Although the Constitution's grant of home rule power is limited, it imposes no express or necessarily implied restrictions on the Legislature's power to grant additional home rule authority to municipalities. "[A] state is free to delegate any power it possesses to its political subdivisions." *Central Maine Power Co. v. Town of Lebanon,* 571 A.2d 1189, 1192 (Me.1990).

■ We conclude that section 3001 constitutes an independent and plenary grant of power to municipalities to legislate on matters beyond those exclusively "local and municipal," and is not limited by the Constitution's narrower home rule provision.[9] *Compare* 30–A M.R.S.A. § 3001 *with* Me. Const., art. VIII, pt. 2, § 1. Municipal legislation will be invalidated only where the Legislature has expressly prohibited local regulation, or where the Legislature has intended to exclusively occupy the field and the legislation would frustrate the purpose of a state law. *Central Me. Power Co. v. Town of Lebanon,* 571 A.2d at 1193.

purpose should a municipality's home rule power be restricted, otherwise they are free to act to promote the well-being of their citizens. *Report of the Joint Standing Committee on Local and County Government on the Revision of Title 30,* at 11 (Dec.1986). (Legislative Committee Report).

9. Although we recognize that the Constitution's home rule provision refers to only the enactment of charter provisions and section 3001 refers to only the adoption of ordinances, we previously have recognized that municipal home rule authority set out in 30 M.R.S.A. § 1917 (1978), the predecessor statute to section 3001, encompasses both ordinance power and

charter power. *See City of Lewiston v. Lewiston Educ. Directors,* 503 A.2d 210, 212–13 (Me.1985) (determining validity of charter provision under home rule statute referring to ordinances); *see also Central Maine Power Co. v. Town of Lebanon,* 571 A.2d at 1193; *Camden and Rockland Water Co. v. Town of Hope,* 543 A.2d 827, 830 (Me.1988) (treating the constitutional and statutory grants of home rule authority as one). Furthermore, there is no practical reason to limit the application of the statutory grant of power because all of the provisions at issue here could have been enacted as ordinances instead of charter provisions.

## II.

## SCHOOL BUDGET PROVISIONS

■ The School Committee first argues that Article VIII, Part First of the Maine Constitution is the exclusive source of legislative authority over education.[10] This contention is without merit. "Article VIII of the Constitution of Maine is a mandate to insure the establishment of public schools ... but it does not prevent the promotion of education by other constitutional means." *Opinion of the Justices,* 261 A.2d 58, 76 (Me.1970) (citations omitted). The Legislature is free to delegate to municipalities all of its authority over education so long as the delegation is not unconstitutional.

■ The School Committee next asserts that matters relating to education, including the school budget provisions, are not "local and municipal in character" and therefore are outside the scope of Article VIII, Part Second of the Maine Constitution. It reasons that therefore, municipalities may not legislate on education matters in the absence of express legislative authority and, because there is no such authority for a budget committee, the enactment of the Charter provisions regarding the school budget process is not within the Town's home rule authority. The Town relies on a string of decisions recognizing the state's unique interest in matters relating to education. *See Squires v. City of Augusta,* 155 Me. 151, 159, 153 A.2d 80 (Me.1959) ("From our study of the laws pertaining to education, we are convinced that the Legislature ... intended that no municipality should regulate by ordinance or order any subjects which would affect or influence general education unless permitted to do so by an express delegation of power."); *School Committee of Winslow v. Inhabitants of Winslow,* 404 A.2d 988, 993–94 (Me.1979) ("[W]e hold that as re-

spects the school committees of towns not otherwise clearly exempted by legislative pronouncement, the matter of terms of office for Committee members is not a matter "local and municipal in character" within the meaning of the "home rule" provision of our Constitution."); *City of Lewiston v. Lewiston Educ. Directors,* 503 A.2d 210, 213 (Me.1985) (quoting *Winslow,* 404 A.2d at 993) (Court struck down charter provision relating to education and not falling within the purview of a statute because municipality not entitled " 'to pursue its own wishes with respect to what is clearly a state matter.' ").[11] The School Committee's reliance on the rationale expressed in these cases is misplaced. *Squires* and *Winslow* have been legislatively overruled by 30–A M.R.S.A. § 3001 to the extent they require an express grant of authority to legislate in the field of education. As previously discussed, section 3001 grants plenary authority to municipalities to legislate in matters beyond those exclusively "local and municipal in character." Accordingly, the "local and municipal in character" limitation does not provide the controlling law in this case.

■ The School Committee next asserts that even assuming the Constitution's home rule provision and section 3001 apply, Title 20–A M.R.S.A. is an exclusive and comprehensive scheme that by clear implication preempts local regulation of matters relating to education in the absence of an express grant of authority. We disagree.

Title 30–A M.R.S.A. § 3001(3) sets out the following standard of preemption: "The Legislature shall not be held to have implicitly denied any power granted to municipalities under [section 3001] unless the municipal ordinance in question would frustrate the purpose of any state law." The Legislative Committee Report further clarifies that a municipality's home rule power should not be restricted unless the munici-

---

**10.** Article VIII, Part First of the Maine Constitution reads in part as follows:

A general diffusion of the advantages of education being essential to the preservation of the rights and liberties of the people; to promote this important object, the Legislature are authorized, and it shall be their duty to

require, the several towns to make suitable provision, at their own expense, for the support and maintenance of public schools....

**11.** *Lewiston* was decided on the basis that a comprehensive statutory scheme preempted the challenged provision by clear implication.

pal legislation "prevents the efficient accomplishment of a defined state purpose." *Legislative Committee Report* at 11. "[O]nly where the 'legislature intend[s] to create a comprehensive and exclusive regulatory scheme [shall] a municipal ordinance [at odds with the regulatory scheme] ... fail as a violation of the Home Rule Statute.'" *Central Maine Power Co. v. Town of Lebanon,* 571 A.2d 1189, 1193 (Me.1990) (quoting *Tisei v. Town of Ogunquit,* 491 A.2d 564, 570 (Me.1985)).

The School Committee first argues that the statutory scheme created by Title 20–A is so pervasive that it establishes that the Legislature intended to exclusively occupy the field of education. The Charter Commission concedes that Maine's education laws set out in Title 20–A constitute a comprehensive statutory scheme, but argues that the Legislature did not intend it to be an "exclusive" scheme. The Legislative Committee Report states: "The mere fact that there is a state law, or even a multitude of state laws on a subject is by itself irrelevant; the key is whether the Legislature intended to *exclusively* occupy the field and thereby deny a municipality's home rule authority to act in the same area." *Legislative Committee Report* at 8.

The School Committee next asserts that because the Legislature has expressly delegated school budgetary authority to school boards in school administrative districts, 20–A M.R.S.A. § 1302 (1993); school boards of community school districts, *Id.* § 1701; and cooperative boards administering vocational educational regions, *Id.* § 8460, a legislative scheme was created that denies by clear implication the Charter's ability to delegate school budget authority to a budget committee. The Charter Commission counters that those stat-

utes were intended to clarify budgetary authority when a school unit is comprised of more than one municipality, and points out that the Legislature has expressly recognized the possibility of budget committee involvement in the preparation of school budgets in 30–A M.R.S.A. § 2528(5)(B)(2).[12]

The School Committee finally contends that interposing a Budget Committee between the School Committee and the Town meeting frustrates the legislative scheme set out in Title 20–A because it undercuts state policy dividing school authority between the school board and the municipal legislative body, *see* 20–A M.R.S.A. § 2(2) (1993),[13] and because the ability of the School Committee to prepare the budget submitted to voters is essential to effectively comply with legislative requirements that it manage schools, *see id.* § 1001, and raise sufficient funds for education. *See id.* § 4501.[14] This argument is also unpersuasive. The budget figures that are submitted to the voters are advisory. Responsibility for the adoption of a final school budget appropriating school funds is vested in the voters, not the School Committee. The Charter's scheme for the appropriation of money for school matters is entirely consistent with the statutory scheme of Title 20–A.

The Charter Commission contends that Title 20–A is not an exclusive scheme because it leaves "open areas that provide room for potential, appropriate regulation by municipalities." *Central Maine Power Co. v. Town of Lebanon,* 571 A.2d at 1194. One such open area ripe for municipal regulation is the designation of the entity responsible for preparing the budget for municipal school units. Although we previously indicated that the education laws of Maine constitute a comprehensive scheme

12. That section reads as follows: "If the action affects the school budget, a recommendation by the school board shall be printed in addition to those of the municipal officers and the budget committee, if any."

13. 20–A M.R.S.A. § 2(2) provides in part that the "control and management of the public schools shall be vested in the legislative and governing bodies of local school administrative

units, as long as those units are in compliance with appropriate state statutes."

14. 20–A M.R.S.A. § 4501 provides in part as follows: "In accordance with the policy expressed in section 2, every school administrative unit shall raise and support annually sufficient funds to maintain or support elementary and secondary schools to provide free education for its resident students at all grade levels."

precluding municipalities from exercising home rule authority in educational matters that fall into "statutory gaps," *City of Lewiston v. Lewiston Educ. Directors*, 503 A.2d at 213, that decision predated the enactment of section 3001, establishing a rebuttable presumption of the validity of municipal ordinances and stating that the Legislature will not be held to have implicitly denied powers to municipalities unless the ordinance provision would frustrate the purpose of state law in the applicable field. The School Committee is unable to articulate any statutory purpose that is frustrated by the Charter provisions relating to school matters. Given the broad delegation of home rule authority and the standard of review of municipal legislation set out in section 3001, we conclude that Title 20–A is not an exclusive legislative scheme that implicitly preempts municipal legislation on education matters in the absence of an express grant of authority.

Finally, the School Committee argues that certain Charter provisions dealing with education, including those providing for the establishment of the Budget Committee, the timing of the budget process, the reconsideration of appropriations, and the treatment of defeated budget items, are directly contrary to state laws and must be declared invalid. We find no merit in these contentions.

## III.

## JURISDICTION

■ The Charter Commission argues that the Superior Court lacked subject matter jurisdiction over the Town's cross-claim because (1) the Town failed to comply with the requirements of 30–A M.R.S.A. § 2108(2) (Pamph.1992), providing that a petition for declaratory relief may be brought under Title 14 by either the Attorney General or ten voters of the municipality [15]; (2) there is no genuine controversy; and (3) the Town does not have standing.

The Town acknowledges that it failed to comply with 30–A M.R.S.A. § 2108(2), but

asserts that the Superior Court had jurisdiction of the cross-claim under the Uniform Declaratory Judgments Act, 14 M.R.S.A. §§ 5951–5963 (1980). That Act allows courts to "declare rights, status and other legal relations whether or not further relief is or could be claimed," *Id.* § 5953, and issue a declaratory judgment whenever "a judgment or decree will terminate the controversy or remove an uncertainty." *Id.* § 5957. Title 14 M.R.S.A. § 5954 specifically provides that "any person ... whose rights, status or other legal relations are affected by a statute [or] municipal ordinance ... may have determined any question of construction or validity arising under the ... statute [or] ordinance ... and obtain a declaration of rights, status or other legal relations thereunder." We have held that the Declaratory Judgments Act is "remedial in nature and should be liberally construed...." *Hodgdon v. Campbell*, 411 A.2d 667, 669 (Me.1980).

■ It is clear that the Superior Court has jurisdiction to adjudicate the validity of a municipal ordinance; however, "[a]ll courts require the declaratory plaintiff to show jurisdiction [and] a justiciable controversy ..." *Id.* at 670. The Town's failure to comply with 30–A M.R.S.A. § 2108(2) is therefore irrelevant provided the Town can establish the existence of a justiciable controversy. A justiciable controversy is " 'a claim of right buttressed by a sufficiently substantial interest to warrant judicial protection.' " *Smith v. Allstate Ins. Co.*, 483 A.2d 344, 346 (Me.1984) (quoting *Berry v. Daigle*, 322 A.2d 320, 326 (Me.1974)). Justiciability requires two elements: (1) a real and substantial controversy and (2) a plaintiff with standing to raise the issues. 2 Richard H. Field, *et al., Maine Civil Practice* § 57.1, at 361 (2d ed. Supp.1981).

The Charter Commission, citing *Township of Whitehall v. Oswald*, 400 Pa. 65, 161 A.2d 348 (1960) and *Harford County v. Schultz*, 280 Md. 77, 371 A.2d 428 (1977), argues that because the Town asked the court to invalidate its own voluntary act— the enactment of the Charter—no genuine

---

15. The Commission does not challenge the court's subject matter jurisdiction over the

School Committee's challenge to the school budget provisions.

controversy exists. In *Township of Whitehall* and *Harford County*, the courts found no actual controversy when the plaintiffs sought a declaratory judgment as to the validity of local laws. The difference between an abstract proposition of law and a justiciable controversy, however, is one of the degree of adverseness of the parties and the credibility of the threat of litigation. *See Canal National Bank v. Mills*, 405 F.Supp. 249, 254 (D.Me.1975).

In the instant case, the degree of adverseness of the parties is greater, and the threat of litigation more concrete, than in either *Harford County*[16] or *Township of Whitehall.*[17] Here, litigation challenging the validity of the Charter was commenced by a party other than the Town. The Town raised its challenge to the Charter as a cross-claim only after it was clear that the Charter's validity was questionable and citizens had challenged the validity of a substantial portion of the system of government embodied in the Charter. Based on the litigation, the Town had a reasonable basis to conclude that the balance of the Charter might be invalid, if only on the ground of non-severability. Given the stated intention of the Charter Commission to litigate to enforce the Charter, and the Town's reasonable belief that enforcement would violate State law, a genuine controversy existed. There was a "definite assertion of legal rights on the one side and a positive denial thereof on the other." *Berry v. Daigle*, 322 A.2d at 326. The " 'mere existence of a claim, assertion or challenge to plaintiff's legal interests, in which the ripening seeds of litigation may be seen and which cast doubt, insecurity, and uncertainty upon plaintiff's rights or status damages plaintiff's pecuniary or material interests and establishes a condition of justiciability.' " *Randlett v. Randlett*, 401 A.2d 1008, 1011 (Me.1979) (quoting *Roberts v. Roberts*, 90 Ill.App.2d 184, 234 N.E.2d 372, 374 (1967)).

We next turn to the issue of standing. The Charter Commission asserts that public officials performing ministerial duties may not challenge the constitutionality of a law under which their performance is sought unless such performance would impair such officials' personal legal rights. Although we have recognized the general rule preventing a ministerial officer from questioning the constitutionality of the law under which his performance is sought, we have also recognized exceptions to the rule " 'when the rights of the state or the public interest are involved' " and "when the performance by an officer in compliance with an invalid law may injuriously affect him personally, such as exposing him to a breach of his official bond." *Associated Hosp. Serv. of Maine v. Mahoney*, 161 Me. 391, 399, 213 A.2d 712 (1965) (citations omitted). Both exceptions apply here. First, there is a clear public interest in managing the Town under a valid charter. Second, the Selectmen had reasonable grounds to believe that enforcing the Charter would require them to breach their "official bond" to uphold the laws of Maine. *See* 30-A M.R.S.A. § 2526(9) (Pamph.1992). Alternatively, failure to enforce the Charter would likely result in expulsion from office. Charter, Article V(B)(3)(2). The Selectmen have standing to obtain a declaratory judgment. *See Board of Educ. v. Allen*, 392 U.S. 236, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968) (Board of Education had standing to obtain declaratory judgment because members were forced to choose between violating their oath to support the Constitution and likely expulsion from office, as well as a reduction in state funding of school districts.).

---

**16.** In *Harford County*, 371 A.2d at 429, 432, the appellees had no interest in the outcome of the action and did not even file a brief. The court noted that "No one as a party to the case has sought to uphold the validity of the charter amendment which, under our cases, is presumed to be valid," and distinguished the situation from another case in which "a spirited defense was ... provided by the County."

**17.** In *Township of Whitehall*, 161 A.2d at 349, the Township sought a declaratory judgment affirming the constitutionality of an ordinance before attempting to enforce the ordinance, citing as the basis for jurisdiction "a conflict of judicial opinion as to the constitutionality of ordinances of the nature and type" of the one at issue.

## IV.

## OTHER CHARTER PROVISIONS

██ The Town challenges Charter provisions concerning the Budget Committee, secret ballot voting, recall elections, and the election of the moderator for town referenda, asserting that they are not within the Town's home rule authority because they conflict with mandatory provisions of Title 30–A. The Constitution's grant of home rule charter authority prohibits local legislation that is contrary to general law. The provisions of Title 30–A are part of the general laws of this state. *See Albert v. Town of Fairfield,* 597 A.2d 1353, 1355 (Me.1991).

At issue is the extent to which the provisions of Title 30–A limit a municipalities' home rule authority. The Statement of Fact accompanying the recodification of Title 30 into Title 30–A (the Home Rule Clarification Act) establishes a three-part test for assessing legislative intent to limit home rule authority in Title '30–A:

1. The bill repeals all asserted grants of power to municipalities that do not contain a limitation on that power, except where a grant may serve as an example of how a municipality may choose to use its home rule power;

2. Provisions which do not limit home rule power, but may serve as a useful guide to municipalities are retained, but with an express recognition of municipal home rule authority to act otherwise; and

3. Finally, express limitations on home rule authority are retained wherever they represent a legitimate state interest. Former limitations which do not further legitimate state interests are repealed to allow municipalities freedom to act under their home rule authority.

L.D. 506, *Statement of Fact* 32 (113th Legis.1987) (Statement of Fact).

Applying this test, and keeping in mind section 3001's plenary grant of home rule authority [18] and establishment of a rebuttable presumption of the validity of municipal home rule legislation, we conclude that municipalities are free to legislate in statutory gaps and where a provision has been designated as a model. A charter provision that directly conflicts with a provision of Title 30–A that is not designated as a model results in express preemption in most cases,[19] but regulation of the same subject matter is generally permissible: "[m]unicipal and state enactments may peacefully co-exist within any given subject area unless a conflict arises, in which event the state statute will control." *Legislative Committee Report* at 12. Any charter provision that frustrates the purpose of a state statute will result in implicit preemption. None of the challenged Charter provisions is designated as a "model."

The Town first argues that interposing a Budget Committee between the Selectmen and the Town Manager conflicts with 30–A M.R.S.A. § 2635, a provision of the "Town Manager Plan,"[20] that provides: "It is the intention of this subchapter [creating the Town Manager Plan] that the board of selectmen as a body shall exercise all administrative and executive powers of the town, except as provided in this subchap-

---

**18.** The Statement of Fact provides the following statement of legislative intent:

[T]he guiding principle in drafting this bill was the idea that the grant of home rule ... power to municipalities ... is a plenary grant of power; no further grants of power need be given to municipalities. The only legislative action that should be taken concerning municipalities is to determine when that power should be limited.

**19.** The Legislature has recognized that a municipality may in limited circumstances deviate from provisions of Title 30–A that are not designated as models:

[T]he Court must remain aware that it was not possible to *completely* revise Title 30; some provisions of the title which are not intended to operate as limitations may have inadvertently escaped revision. However, the Committee believes that the addition of an expressed standard of implied preemption will aid the Court in construing a statute's effect on municipal home rule where there is no express indication of Legislative intent within the statute....

*Legislative Committee Report* at 13.

**20.** The Charter reaffirms the Town's previous adoption of the Town Manager Plan. Charter, Art. IV, § (1)(C).

ter." The Charter Commission counters that the Charter provisions creating the Budget Committee are valid because the Budget Committee does not work at cross-purposes with any statute. We agree.

The Town next claims that the Charter provision requiring every vote at every town meeting to be by secret ballot is inconsistent with Title 30–A M.R.S.A. § 2528(1), which provides: "[w]hen any town accepts this section at a meeting held at least 90 days before the annual meeting, the provisions of this section [governing a town's use of secret ballot voting] apply to the election of all town officials required ... to be elected by ballot." We find no direct conflict. The Town may elect the option of establishing secret ballot voting by Charter in lieu of the procedure recommended by the statute.[21] There is also no basis for implied preemption. The challenged Charter provision does not interfere with the purpose of section 2528. In fact, that statute expresses a policy favoring secret ballot votes over votes by any other means. *See* 30–A M.R.S.A. § 2528.

The Town points to other alleged inconsistencies between the Charter and section 2528. In each case, however, there is an absence of direct conflict between the Charter and the statute, and the Town is unable to demonstrate interference with the purpose of the statute. These provisions are within the Town's home rule authority.

The Town next asserts that Charter provisions establishing recall election procedures allowing the removal of elected Town officials from office for any reason at any time after the official has held office for at least six months, is preempted by clear implication. But Title 30–A is not an exclusive, comprehensive scheme that prohibits regulation in the absence of an express grant, and no statutory purpose is frustrated by the challenged Charter provision. Also, contrary to the Town's contention, it is not clear that municipal officials have been granted a comprehensive right to be free from recall.[22] In fact, the Legislature allows municipalities to determine removal powers regarding school board members by charter. *See* 20–A M.R.S.A. § 2301. The Charter's recall provisions are within the Town's home rule authority.

The Town finally argues that the Charter provision providing that the moderator for Town referenda will be elected for a one-year term conflicts with Title 30–A M.R.S.A. § 2524, captioned "General town meeting provisions," providing that "all town meetings" shall be opened by the Town Clerk "calling for the election of a moderator by written ballot." Although section 2524 is not identified as a model, its provisions are very general. Further, there is no inconsistency between the challenged Charter provision and any state purpose. Applying the standard of implied preemption and the statutory mandate to construe home rule authority liberally, and keeping in mind the Legislature's acknowledgment that not all "model" provisions were so labelled, we conclude that the Legislature did not intend section 2524 to limit municipal home rule authority. The Charter simply sets out an alternate procedure to reach the mandated goal of electing a moderator.

The entry is:

Judgment in favor of the Charter Commission with respect to non-school matters affirmed. Judgment in favor of the School Committee vacated. Remanded to the Superior Court with instructions to enter judgment in favor of the Charter Commission.

All concurring.

---

21. All mandatory provisions of section 2528 regarding the actual vote must be complied with. The Superior Court invalidated a Charter provision requiring tie votes to be resolved by lot because Section 2528 requires subsequent votes to be by ballot.

22. Title 30–A M.R.S.A. § 2533 allows one who claims to have been elected to a municipal office to proceed against another who claims title to the office. Accordingly, the statute applies to persons seeking title after an election, not to recall elections.