**SCHOOL COMMITTEE OF the TOWN OF WINSLOW et al.**

v.

**INHABITANTS OF the TOWN OF WINSLOW et al.**

Supreme Judicial Court of Maine.

Aug. 9, 1979.

Drummond, Woodsum Plimpton & MacMahon by Hugh G. E. MacMahon (orally), Richard A. Carriuolo, Portland, for plaintiffs.

Sandy & Sandy by Robert E. Sandy, Jr. (orally), Waterville, for defendants.

Before POMEROY, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

POMEROY, Justice.

Questions arising from the operation of public schools, the relationship between the superintending school committee and teachers and their respective rights and obligations, have long been a fruitful source of litigation. The first such litigation came to the Court and was decided in 1825. *Searsmont v. Farwell*, 3 Me. 450 (1825). A controversy involving the respective rights of the City Council of a City and its School Committee is not unprecedented. *Lunn v. City of Auburn*, 110 Me. 241, 85 A. 893 (1913).

However, the case now for decision is the first which has come before us since the adoption of the Municipal Home Rule Provision of our Constitution, (Constitution of Maine, Art. 8, Part 2, Section 1, added by amendment CXI, approved by voters at Special Election in November 1969). The matter now before us is actually three actions.[1] All cases challenge the legality of the adoption by referendum on December 5, 1977 of proposed amendments to the Winslow Town Charter.

The referendum changed the term of office of Winslow School Committee Members from three years to two, and the system of election from an *"at large basis"* to a *"district basis."* Plaintiffs were granted summary judgment by the Superior Court, Kennebec County on all three actions on July 11, 1978, thereby nullifying the election result. A motion to alter and amend the judgment was denied. This appeal followed.

We deny the appeal.

In 1969 the legislature granted Winslow its Town Charter. (Private and Special Laws 1969 Ch. 7). The Charter replaced Winslow's town meeting form of government with a Council-Manager organization, and was approved by the voters of Winslow at their March 10, 1969 annual town meeting.

The Charter created a Town Council composed of seven members elected at large for three-year terms, the terms to be staggered. School administration was vested in a municipal department of education, to be controlled by a five-member school committee created by Charter Article 7. The Committee members were to be elected at large to staggered three-year terms.

In 1975, a referendum adopted a charter amendment changing the election of council members from an at-large basis to a district basis, creating seven single-member districts, and shortening council terms to two years. The amendment took effect beginning with the November, 1976 municipal election.

The procedures which concern us here began in August, 1977, when the Council,

---

1. The three actions filed below were consolidated by agreement, and summary judgment motions as to all matters presented by both sides. The actions were:

   1. *Cv–78–5: Action by School Committee members in their official capacities against the Inhabitants, Town Council, Town Clerk and Town Manager of Winslow seeking declaratory and injunctive relief pursuant to 14 M.R.S.A. § 5951 et seq.*

   2. *Cv–78–6: Same plaintiffs in capacity as registered voters, with other registered voters, petitioned pursuant to 30 M.R. S.A. § 1919(2), for leave to file a complaint as in Cv–78–5. Leave granted, complaint served on same defendants.*

   3. *Cv–78–7: Same plaintiffs, individual capacity, petitioned pursuant to 30 M.R. S.A. § 1919(3) against same defendants, seeking judicial review of the referendum procedures and a declaration setting aside adoption of Amendment 1 on grounds of invalid procedure.*

by ordinance, adopted and proposed to the voters a series of charter amendments concerning both council and school committee elections. Included among the proposed amendments were changes to Charter Section 701, relating to the School Committee[2] and to Charter Section 201, relating to the Town Council.[3] Another amendment, to add a new Section 905 to the Charter, was also proposed.[4] These proposed amendments, together with others not the subject of these cases, were submitted to the voters on December 5, 1977, and were approved.

This appeal focuses on Proposed Charter Amendments Nos. 1 and 4. In sum, Amendment No. 1 proposed the following charter revisions:

(1) Amend Section 701 so as to:

(a) *reduce term of office for School Committee members from 3 to 2 years;*

(b) *provide for election of all five Committee seats by districts;*

(c) *provide for election of all five Committee seats in November 1978;*[5]

(d) *provide for an initial term of office of one rather than 2 years for 2 of the Committee members to be elected in November 1978;*[6]

(e) *eliminate a provision that upon adoption of the Charter (in 1969), the incumbent Committee*

*members would retain office for their elected terms.*

(2) Amend Section 201 so as to:

(a) *change the manner of electing Town Council members from 7 seats by districts to 5 seats by district and 2 seats at large; and*

(b) *establish an initial term of one year for three of the seven councilors elected in the November 1978 election.*[7]

Moreover, voters were instructed on the official ballot to vote either *"yes"* or *"no"* to both Proposed Charter Amendment No. 1 and Proposed Charter Amendment No. 4. Proposed Amendment No. 4 offered the following revisions:

(1) Add a new Section 905 to the Charter, which would:

(a) *establish 5 Town Council Districts;*

(b) *establish a Town Districting Commission, to propose a plan for redistricting the Council Districts;*

(c) *establish guidelines and procedures for the work of the Districting Commission and action by the Council in adopting the redistricting proposals; and*

(d) *establish guidelines and procedures in the event the Council failed to adopt the redistricting proposals prior to the November 1978 election.*

**2.** Article 7 of the Charter was to be amended to reduce committee terms from three to two years, and to change from at-large to district election, with one member from each of five districts. Elections for all five new committee seats would be held at the regular election in November 1978.

**3.** Article 2 of the Charter was to be amended to alter council membership from one from each of seven districts to one from each of five districts (see n.4, *post*) plus 2 at-large members. The two-year term remained unchanged.

**4.** This Section would create 5 council districts, replacing the existing seven.

**5.** All incumbents terms were thus to end on December 31, 1978. Only two members had been elected previously for terms that would

otherwise expire on that date. The remaining three members had been elected in 1976 and 1977 for three-year terms.

**6.** The proposed amendment stated that, upon initial election under the new system, Committee members from Districts 1, 3 and 5 would serve 2-year terms, and members from Districts 2 and 4 would serve one-year terms. Terms thereafter would be 2 years.

**7.** Councilors from Districts 1, 3 and 5 and the Councilor-at-large with the most votes would serve two-year terms; the remaining councilors would serve one-year terms. Terms thereafter would be 2 years.

Both proposed Amendments were adopted by the Winslow voters.[8]

In its opinion of July 7, 1978, the Superior Court held:

*That the amendments to Section 701 to the Charter . . . changing the term of office for school committee members from three (3) to two (2) years and terminating the terms of office of present school committee members as of December 31, 1978, violate the "Home Rule" provisions, Article VIII, Part Second, Section 1, of the Constitution of the State of Maine, because: (a) they do not involve a matter local and municipal in character, and (b) they are prohibited by the provisions of the constitution and general law of the State of Maine relating to educational matters.*[9]

Appellee's presented three distinct arguments for setting aside the referendum, two of which were specifically cited in the Superior Court's opinion. The last reason was impliedly accepted by the grant of summary judgment. These are (1) the constitutional argument, asserting that the school committee term of office is an educational matter reserved to the State, and beyond the municipality's power to modify, pursuant to the Home Rule Amendment, *supra*, to the Maine Constitution; (2) the statutory argument, asserting that 20 M.R.S.A. §§ 471–472 require a 3-year term for town school committees; and (3) the procedural argument, asserting that the combination of amendments to Charter Articles 2 and 7 in the same referendum question, and the instructions to vote identically on Amendments 1 and 4 amounted to an improper joinder of separate subjects in violation of 30 M.R.S.A. § 1914(1)(A).

Appellants contend that, contrary to the Superior Court's conclusion, the term of office of school committee members is a matter which is local and municipal in character, and thus within the prerogative of the Town to modify.

While there is ample authority for the proposition that education is a matter of State rather than local concern, they argue, the Court erred in concluding that the term of office of a Winslow School Committee member is a matter of *"education"* for these purposes. They allege a distinction, said to have been previously recognized in other jurisdictions, between the State's *"educational policy"* and the selection of a local body to administer that policy. Secondly, appellants alleged that 20 M.R.S.A. §§ 471–472, while facially applicable to Winslow as a *"town,"* does not apply, as Winslow's government is *"municipal,"* and no general law establishes the term of office for school committees in *"cities."* Finally, they contend that the referendum questions were properly joined, setting forth a *"functionally dependent"* proposal for a local election system for both Town Council and School Committee.

The preeminence of the State in educational matters, vis-a-vis local government is clear. One authority on the subject has expressed the general principle and its corollary implications in this manner:

*The most universal element of conceptual design in the American school system is the maxim that education is a concern of all the people. As it is usually stated, education is a state function.*

. . . . .

*The conclusion from this is that education, even when delegated to municipal officers, is different from most of the functions of municipal officers in that any state-wide regulation takes precedence over local regulations even though the right to establish the local regulations*

---

8. As to Amendment No. 1, the official tally was: Yes–928; No–869; Blanks–250; Spoiled–8. As to Amendment No. 4, the result was: Yes–942; No–810; Blanks–301; Spoiled–2.

9. Article VIII, Part Second provides:

§ 1 Power of Municipalities to Amend Their Charters

*Section 1. The inhabitants of any municipality shall have the power to alter and amend their charters on all matters, not prohibited by Constitution or general law, which are local and municipal in character. The Legislature shall prescribe the procedure by which the municipality may so act.*

*may appear to arise from a municipal charter approved by the legislature or its agents or established by general home rule regulations in the constitution itself. In other words, general powers of the municipality, even though they may derive directly from the constitution, must bow to state regulation on the field of education, established by authority of the legislature. In such cases where the municipality acts as the local agent in charge of education, the municipality is at one and the same time a chartered corporation and an agency of the state.*

H. Mort, *The Law and Public Education* 16–17 (1959).

This Court has repeatedly reaffirmed, in various contexts, the plenary authority of the Legislature in the control of the public school system of this state. A consistent line of authority developed over the past century [10] culminated in our decision two decades ago in *Squires v. City of Augusta*, 155 Me. 151, 153 A.2d 80 (1959).

In *Squires*, we stated that "[t]he State controls the public schools," *supra* at 155, 153 A.2d at 83, and that "*State educational policy cannot and must not be interfered with by any subordinate governing body.*" *Id.* at 159, 153 A.2d at 85. The Legislature, we concluded, controlled "*the educational system of the State in all its varied and intertwining aspects.*" *Id.* (emphasis added). Subsequent decisions have cast no doubt on the vitality of the principle's set forth in *Squires*.[11]

In its brief, however, appellants urge that we adopt a distinction, recognized in some jurisdictions,[12] between matters of educational policy—such as curriculum—and matters of procedure—such as election—as respects the power of the state over local school committees. Despite the able manner the argument is presented, we are unable to reconcile it with the law of this state, nor with what we perceive to be the majority rule.

Relevant cases establishing the principle that local school boards are state agents or officers abound. *See, e. g., Lunn v. City of Auburn, supra; Shaw v. Small, supra; Derfall v. Town of West Hartford*, 25 Conn. Sup. 302, 203 A.2d 152, 154 (1964); *Murphy v. Berlin Board of Education*, 167 Conn. 368, 355 A.2d 265 (1974); *Board of Education of Louisville v. Society of Alumni of Louisville Male High School*, 239 S.W.2d 931, 933 (Ky. 1951); *Norton v. Letton*, 271 Ky. 353, 111 S.W.2d 1053, 1055 (1937).

Most significantly, courts of other jurisdictions have held that the manner of selecting school boards, including the establishment of terms of office of school board members, is a matter beyond municipal control. This rule has been upheld against challenges premised on constitutional "*home rule*" provisions. *Lanza v. Wagner*, 11 N.Y.2d 317, 326–327, 229 N.Y.S.2d 380, 183 N.E.2d 670, *appeal dismissed*, 371 U.S. 74, 83 S.Ct. 177, 9 L.Ed.2d 163 (1962) is on point. There, the New York Court of Appeals upheld an act of the New York Legislature reorganizing the New York City

---

10. *See Opinions of the Justices*, 68 Me. 582, 584 (1876); *Lunn v. City of Auburn, supra* (characterizing school committee as a "*department of our state government*"); *Shaw v. Small*, 124 Me. 36, 125 A. 496 (1924) (in expelling a student, the Committee "*in no sense represents the town.*"); *Burkett v. Youngs*, 135 Me. 459, 199 A. 619 (1938).

11. *See, e. g., Beckett v. Roderick*, Me., 251 A.2d 427, 432 (1969); *McGary v. Barrows*, 156 Me. 250, 259, 163 A.2d 747 (1960); *Kittery Teachers Association v. Superintending School Committee*, York County Superior Court, Docket No. 2369, August 12, 1971 (Wernick, J.) (characterizing school committee as "*an arm of the state.*")

12. *E. g., Board of Trustees of Calaveras Unified School Dist. v. Leach*, 258 Cal.App.2d 281, 65 Cal.Rptr. 588 (1968); *State ex rel. Wasilewski v. Board of School Directors*, 14 Wis.2d 243, 111 N.W.2d 198 (1961); *Tanner v. Civil Service Commission*, 211 Minn. 450, 1 N.W.2d 602 (1941); *Spano v. City of Middletown*, 169 Misc. 338, 7 N.Y.S.2d 14 (1938). We note, however, that *Calaveras* turns on a provision of the California Constitution (Art. 11, Sec. 8½, subd. 2). Specifically allowing municipalities to set the term of office for school board members, and that we consider *Lanza v. Wagner*, cited in text, *post*, to be inconsistent with *Spano*, and to effectively overrule it. Further, neither *Tanner* nor *State ex rel. Wasilewski* deal directly with issues of municipal school administration.

Board of Education and establishing a new system for selecting Board members against a challenge based on the *"home rule"* provisions of the New York Constitution. *See also, City of Beaumont v. City of Beaumont Independent School Dist.,* 164 S.W.2d 753, 756 (Tex.Civ.App.1942). Similarly, a Connecticut court invalidated an effort by Westport town selectmen to hold a recall election—as provided in the town charter—for the chairman of the town board of education. *Sherman v. Kemish,* 29 Conn.Super. 198, 279 A.2d 571 (1971). The board members, the Court held, "[were] not, *nor could they be, reasonably included in the recall provision as elective officers of the town . . . because the primary legal obligation of members of a board of education is to the state of Connecticut for educational purposes."* 279 A.2d at 573–574.

Other cases support the primacy of state regulation as respects the selection of school boards members, their duties and tenure.[13]

A *"definite pattern"*, *Squires, supra,* 155 Me. at 159, emerges from an investigation of our Legislature's action respecting the term of office of school board members. Town school committee member's terms are set at three years by 20 M.R.S.A. § 471–472. Title 20 M.R.S.A. § 302 likewise establishes

a three-year term for directors in School Administrative Districts, and 20 M.R.S.A. § 352 prescribes a three-year term for school trustees in community school districts. Most critically, the Legislature specified a three-year term for Winslow School Committee members in Chapter 7, Private and Special Laws of 1969.[14]

It is true, as appellant points out, that 20 M.R.S.A. §§ 471–472, setting a three-year term for town school boards, envisions election of members at town meetings. Winslow abandoned town meeting with the adoption of its Charter in 1969. The issue here, however, is not the power to select by municipal election rather than town meeting, but the power to prescribe the term of office.[15] Winslow may fall within a statutory gap not contemplated by the Legislature, but this would not entitle it to pursue its own wishes with respect to what is clearly a state matter and as to which the state has already prescribed. Some more explicit authorization is required,[16] and does not appear. Rather, the clear thrust of every action by the Legislature in this regard suggests an intention to occupy the field in the subject of committee terms, and to preempt inconsistent local regulation.[17]

In short, we hold that as respects the school committees of towns not otherwise

---

13. *See e. g., School District of Seward Education Association v. School District of Seward,* 188 Neb. 772, 199 N.W.2d 752, 757 (1972); *Penn School Dist. No. 7 v. Board of Education,* 14 Mich.App. 109, 165 N.W.2d 464, 472 (1968); *Campbell v. Area Vocational Technical School No. 2,* 183 Neb. 318, 159 N.W.2d 817, 821 (1968); *State ex rel. Clulow v. Board of Education,* 339 P.2d 534 (Okl.1959); *Belles v. Burr,* 76 Mich. 1, 43 N.W. 24 (1889).

14. Significantly, in establishing terms of office for 53 town school committees by private and special laws from 1945 until the 1969 adoption of the Home Rule amendment to our Constitution, the Legislature consistently prescribed a three-year term, either explicitly or by reference to the general law. One of these, as noted, was the Town of Winslow.

15. Winslow has held Committee elections under its charter system for years, without apparent controversy. Whether the State could compel it to employ a town meeting for such elections after chartering a council-manager form of government is an issue not presented.

16. For example, 20 M.R.S.A. § 476 provides:

> *Sections 471 and 472 shall not apply to cities whose charters specify the methods of election and term of office of a superintending school committee or board of education; nor to towns, cities and incorporated districts authorized by private and special laws to choose school committees other than those herein provided for.*

In the case of Winslow, the relevant private and special law specified a three-year term, the same as prescribed by §§ 471–472. Nor was a committee of a different nature than that contemplated by §§ 471–472 authorized. We cannot accept the suggestion that chartering a town with a council-manager form of government makes applicable all legislative pronouncements addressed to *"cities"* or *"municipalities."* Accordingly, §§ 471–472 govern.

17. We do not need to decide that a 3-year school committee term is constitutionally mandated; only that the Legislature has evidenced an intention, consistent with our Constitution, to prescribe 3 years as the required term.

clearly exempted by legislative pronouncement, the matter of terms of office for Committee members is not a matter "*local and municipal in character*" within the meaning of the "*home rule*" provision of our Constitution.

Undoubtedly in fixing the terms of school committee members at three years, the Legislature did not pick this figure out of thin air. Consideration was surely given to the policy judgments which enter into selecting the appropriate term of office. The term of office of a school committee member is of more than procedural significance, and is part of "*the educational system of the State in all its varied and intertwining aspects.*" *Squires, supra,* 155 Me. at 159, 153 A.2d at 85. The length of a term of public office is critical to the ability of the officeholder to familiarize himself with his duties and to exercise authority and independent judgment. The State's authority over educational policy must embrace the right to preclude local districts from interfering with its judgment that three years represents an appropriate term of office to be altered only by explicit leave of state authority. The mischief that might flow from local control of such "*procedural*" aspects of education as school board selection and tenure is untold. The extremes of officers made ineffective because they are shackled by six-month terms or of officers who become isolated from the public because they hold ten-year terms are but examples. In *Lunn v. City of Auburn, supra,* we said of the school committees that "[n]o department of our State government requires officials to be selected with greater care." 110 Me. at 247, 85 A. at 895–896. That great care must be overseen by the State, lest its policies be frustrated.

We find it unnecessary to reach the issue of claimed improper joinder of subjects on the referendum ballot.

The entry is:

Appeal denied.

Judgment affirmed.

McKUSICK, C. J., and WERNICK, J., did not sit.