## CITY OF LEWISTON

v.

## LEWISTON EDUCATIONAL DIRECTORS and Lewiston School Committee.

Supreme Judicial Court of Maine.
Argued Nov. 22, 1985.
Decided Dec. 31, 1985.

Skelton, Taintor, Abbott & Orestis, Frederick G. Taintor, Michael R. Poulin (orally), Lewiston, for plaintiff.

Brann & Isaacson, George Isaacson (orally), Lewiston, for Lewiston Educational Directors.

Jensen, Baird, Gardner & Henry, Brian Shaw, Merton Henry (orally), Portland, for Lewiston School Committee.

Before McKUSICK, C.J., and NICHOLS, ROBERTS and WATHEN, JJ.

WATHEN, Justice.

The Superior Court (Androscoggin County) reported this matter to the Law Court on an agreed statement of facts pursuant to M.R.Civ.P. 72(b). At issue is the validity of a provision of the Lewiston City Charter that requires City Council approval of a collective bargaining agreement between the Lewiston School Committee and five persons employed as directors of education. The City of Lewiston seeks a declaration that the collective bargaining agreement is void due to the absence of City Council approval. We conclude that the charter provision is invalid and direct the entry of declaratory relief in favor of the defendants.

I.

The Lewiston School Committee (the Committee), as established by the city charter, consists of seven members, one from each political ward. The members are ap-

pointed to their office by the mayor and serve a five-year term. The Lewiston Educational Directors (the Directors) is an unincorporated association of five school department employees. The five employees are state certified administrators of the departments of vocational education, elementary education, adult education, and special education within the Lewiston school system. In May of 1984 the Directors notified the Committee that they were forming a collective bargaining unit and requested recognition. The Committee voted to voluntarily recognize the Directors as a bargaining unit, and after negotiations, a collective bargaining agreement was executed on July 17, 1984. The agreement allows the Superintendent of Schools to set the salary for each director subject to the approval of the Committee. The City Council notified the Committee that the agreement was null and void and instructed the Finance Director not to recognize the pay increases granted to the Directors pursuant to the agreement. The City continued to pay salaries and benefits in accordance with a pay plan previously approved by the City Council.

The basis for the action of the City Council is the following provision contained in section 5.03(c) of the Lewiston City Charter:

> Approval of labor contracts. Any contract negotiated with any bargaining agent representing employees of the school department, pursuant to the Maine Public Employees Labor Relation Law, shall require approval by the city council.

In order to assess the validity of section 5.03(c) it is necessary to review a portion of the history of Lewiston's charter. The current charter was adopted pursuant to Maine's "home rule" provisions, Me. Const. art. VIII, pt. 2, § 1; 30 M.R.S.A. § 1911–1920 (1978 & Supp. 1985–1986), at a special municipal election held on June 19, 1979. The charter in effect prior to that time was created by a Private and Special Act of the Legislature, P. & S.L. 1939, ch. 8 as amended. Under the legislative charter, collective bargaining with school employees involved three units of local government. The employees bargained with representatives of the Board of Education (forerunner of the Committee) and representatives of the Board of Finance (a body eliminated by the new charter). After an agreement was reached, it would first be submitted to the Board of Education, next to the Board of Finance, and then to City Council for final approval. Under the new charter, at least until the present case arose, collective bargaining agreements have been negotiated by a team consisting of representatives of both the Committee and the City Council. After an agreement was reached, it would then be submitted to the City Council for final approval. Both the old and new charter require City Council approval and both call for the Committee to be appointed by the popularly-elected Mayor.

Lewiston resists defendants' attempt to avoid the requirement of City Council approval by arguing that the adoption of section 5.03(c) constitutes a valid exercise of "home rule" authority. Alternatively, Lewiston argues that if the provision is invalid, it would violate article I, section 22 of the Maine Constitution (prohibition of taxation without representation) to authorize an appointed school committee to execute binding collective bargaining agreements. We reject both contentions.

II.

The principal claim advanced by the City in support of the validity of section 5.03(c) is that the municipally-enacted provision merely carries forward the same requirement that existed under the prior, legislatively-granted, charter. The argument flows from the premise that the constitutional "home rule" amendment grants authority to municipalities, limited by the general laws of the State, to *change* the provisions of their legislative charters. Me.

Const. art. VIII, pt. 2, § 1.[1] The City argues that because the new charter does not substantively change the procedure for approval of school employee contracts, no "home rule" analysis is necessary. In the City's view, section 5.03(c) retains its character as a special act of the Maine Legislature and is valid even if it is inconsistent with the general laws of Maine.[2]

The procedural statutes enacted by the Legislature to implement the "home rule" amendment, 30 M.R.S.A. §§ 1911–1920 (1978 & Supp. 1985–1986), do not sustain the position taken by the City. Lewiston adopted its current charter, including section 5.03(c), pursuant to the authority granted by the implementing act. The Legislature specifically provided for the disposition of private and special laws in the following terms:

> Private and special laws applying to a municipality shall remain in effect until repealed or amended by a charter revision, *adoption* or amendment under this chapter.

30 M.R.S.A. § 1918 (1978) (emphasis added). Under this provision, the adoption of the new municipal charter by the electorate of the City of Lewiston triggered the legislative repeal of the private and special laws.[3] The effect of this repeal is two-fold. First, the sources of authority for provisions in the new charter are confined to the

"home rule" amendment and the implementing statutes. Second, the power of the charter to override the general laws of the State is extinguished when it ceases to exist as a result of a special act of the Legislature. Even if we assume that section 5.03(c) is substantively identical to the prior charter provision,[4] it must be justified as an exercise of "home rule" authority and is subject to the general laws of Maine.

Under "home rule", as it exists in Maine, a municipality may "exercise any power or function which the Legislature has power to confer upon it, which is not denied either expressly or by clear implication." 30 M.R.S.A. § 1917 (1978). We have held that where the Legislature enacts a comprehensive scheme of statewide regulation, it denies by clear implication the right of municipalities to legislate in the regulated area. *Ullis v. Inhabitants of Town of Boothbay Harbor*, 459 A.2d 153, 159 (Me.1983).

The City argues that the charter provision granting the authority to the City Council to approve collective bargaining agreements has not been expressly or implicitly denied. First, the City relies on a legislative statement of policy that the control and management of schools is vested in both the legislative (city council) and the governing (school committee) bodies of a municipality. 20–A M.R.S.A. § 2(2) (1983).[5]

1. The amendment states:
   > The inhabitants of any municipality shall have the power to alter and amend their charters on all matters, not prohibited by Constitution or general law, which are local and municipal in character. The Legislature shall prescribe the procedure by which the municipality may so act.

2. We have held that special legislative acts, such as the City's prior charter, control over general laws enacted before or after the special law. *State v. Donovan*, 89 Me. 448, 452, 36 A. 982, 983 (1897).

3. In apparent recognition of the force of section 1918, the City takes an entirely different approach in a supplemental brief filed by leave of court after oral argument. The City presents the artful argument that the counterpart to section 5.03(c) in the original legislative charter relates to matters of state policy and concern

and does not relate to a matter local and municipal in character. Accordingly, the "home rule" amendment would deny municipal authority to repeal that portion of the prior charter, and that particular provision would continue in existence as a private and special law. The City overlooks the fact that under 30 M.R.S.A. § 1918, it is the Legislature and not the City that repealed the pre-existing private and special law. The City merely fulfilled one of the acts stated as a condition to legislative repeal, namely—the adoption of a new charter.

4. The parties disagree on this point. In view of our conclusion, we need not resolve the question.

5. The section states in relevant part:
   > It is the intent of the Legislature that the control and management of the public schools shall be vested in the legislative and govern-

Next, the City notes that the Legislature has passed no law specifically dealing with salaries of school employees other than teachers or superintendants, or with the authority of school boards to enter into collective bargaining agreements. In addition, 20–A M.R.S.A. § 15614(1) (Supp. 1985–1986) leaves to the municipal legislative body the power to fix the total school appropriation, and thus, fix both the amount raised locally and the amount of matching state contributions.[6]

The defendants respond by noting that school boards are given broad authority over the management of schools. 20–A M.R.S.A. § 1001 (1983 & Supp. 1985–1986). In addition, school boards are expressly empowered to set the salaries of teachers and superintendents. 20–A M.R.S.A. § 13201 (Supp. 1985–1986); *Id.* § 1054(2) (1983). Finally, as the Committee points out, the Legislature's concern over the effect that salaries have on the quality of education is reflected by its recent enactment of mandatory increases in teacher salaries. P.L. 1985 c. 505 (codified at 20–A M.R.S.A. § 13404 (Supp. 1985–1986)).

■ In *School Committee of Winslow v. Inhabitants of Winslow,* 404 A.2d 988, 992 (Me.1979), we reiterated "the plenary authority of the Legislature in the control of the public school system of this state." As the statutes cited above illustrate, however, in exercising that plenary control the Legislature has delegated authority to both school boards and local legislative bodies. The question presented in this case is whether the Legislature in allocating those duties, has by clear implication denied the City Council final authority over the school employee contract at issue. We conclude that it has.

The sole function expressly granted to municipal legislative bodies is the establishment of the total local appropriation for schools.[7] School boards, however, have been granted broad authority over most other aspects of public education,[8] including the power to set salaries for teachers and superintendents. Thus, although the City Council ultimately exercises fiscal control in general, school boards exercise authority over the details of education. The absence of an express provision for general employees of the school department does not suggest a reservation of authority to the City Council. As this Court has observed:

> [Lewiston] may fall within a statutory gap not contemplated by the Legislature, but this would not entitle it to pursue its own wishes with respect to what is clearly a state matter and as to which the state has already prescribed.

*School Committee of Winslow v. Inhabitants of Winslow,* 404 A.2d at 993. Education is a state matter, *Id.* at 992; *Squires v. City of Augusta,* 155 Me. 151, 159, 153 A.2d 80, 85 (1959), and the salaries at issue in this case are akin to those aspects of

---

ing bodies of local school administrative units, as long as those units are in compliance with appropriate state statutes.

6. The section states in relevant part:
   The following provisions shall apply to local appropriations for school purposes.
   1. Foundation allocation. The legislative body of each school administrative unit may vote to raise and appropriate an amount up to the local share of the foundation allocation.
   A. An article in substantially the following form shall be used when a school administrative unit is considering the appropriation of the foundation allocation.
   (1) "Article    :  To see what sum the municipality/district will appropriate from the foundation allocation for school purposes (Recommend $     ) and to see what sum the

municipality/district will raise as the local share of the foundation allocation (Recommend $     )."

7. Towns in school administrative districts are not even allowed this function but must appropriate their share of the budget approved at the district budget meeting. 20–A M.R.S.A. § 15615 (Supp. 1985–1986). In addition, even cities and municipalities are required to raise sufficient taxes to meet bonds and notes issued for school purposes. *Id.* § 15619(1) (Supp. 1985–1986).

8. The Legislature has granted school boards authority over the course of instruction, the selection of textbooks, the suspension or expulsion of students, the management of school property, and the dismissal of teachers. 20–A M.R.S.A. §§ 1001, 13202 (1983 & Supp. 1985–1986).

education over which authority has been delegated to school boards. The comprehensive statutory scheme denies by clear implication the authority attempted to be granted by section 5.03(c).

### III.

Finally, the City focuses on the fact that members of the Committee are appointed rather than elected. It is argued that permitting such a body to execute a binding agreement would result in taxation without representation in violation of Me. Const. art. I, sec. 22.[9] The defendants counter by asserting that no constitutional problem is presented because the City Council retains ultimate authority to set the total local appropriation for schools.

■ The Legislature has expressly granted authority to local legislative bodies to set the annual appropriation for schools. 20–A M.R.S.A. § 15614(1) (Supp. 1985–1986); *see supra* note 6. On a related point, we stated:

> It is implicit that the authority of the Superintendent and Committee covers the employment of teachers and determination of their salary, limited only by the funds annually appropriated by the respective cities and towns for school purposes ....

*Sawin v. Town of Winslow*, 253 A.2d 694, 699 (Me.1969). Although the City Council does not have final approval over this collective bargaining agreement, it retains the authority to set the total appropriation and to allocate funds among items other than collective bargaining agreements. In this manner, its authority over taxation is preserved.[10]

The entry is:

Remanded to the Superior Court with instructions to enter a judgment consistent with this opinion declaring the collective bargaining agreement to be a valid and enforceable obligation.

Costs to be awarded to the defendants.

All concurring.

---

9. That provision states:

   No tax or duty shall be imposed without the consent of the people or of their representatives in the Legislature.

10. The present case does not present a situation in which a lack of control over the agreement at issue results in a *de facto* transfer of the taxing function from the City Council to the Committee. The pay increases granted under the new contract amount to approximately $14,050 for the school year 1984–1985. In the prior year, the Lewiston school budget exceeded $10,000,000, more than half of which was raised locally.